## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ) | |
| ) | |
| TREVOR GOODMAN, ) | Case No.  1:20-cv-4031 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **COMPLAINT FOR** |
| ) | **VIOLATION OF THE** |
| ) | **FEDERAL SECURITIES LAWS** |
| STEMLINE THERAPEUTICS, INC., RON ) | |
| BENTSUR, IVAN BERGSTEIN, ) | JURY TRIAL DEMANDED |
| DARREN CLINE, ALAN FORMAN, ) | |
| DANIEL HUME, MARK SARD, and ) | |
| KENNETH ZUERBLIS, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Trevor Goodman ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff, a stockholder of Stemline Therapeutics, Inc. ("Stemline or the "Company") brings this action against the Company and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as well as Rule 14d-9 promulgated by the U.S. Securities and Exchange Commission (the "SEC"), arising out of material omissions and misstatements made in connection with the merger agreement (the "Merger Agreement") between and among Stemline and affiliates of BerlinChemie AG, a company formed under the laws of Germany ("BerlinChemie"), an indirect wholly owned subsidiary of A. Menarini-Industrie

Farmaceutiche Riunite - S.r.l., a company formed under the laws of Italy ("Menarini" and together with BerlinChemie, the "Purchaser").

2.     On May 4, 2020, the Company issued a press release (the "Press Release") announcing that the Board had caused the Company to enter into the Merger Agreement.  Pursuant to the Merger Agreement, each Stemline common share issued and outstanding will be converted into the right to receive (i) $11.50 per Share, net to the seller in cash, without interest (the "Cash Amount"), plus (ii) one (1) contingent value right per Share (a "CVR" and the Cash Amount plus one (1) CVR collectively, (the "Merger Consideration"). Each CVR represents the right to receive (i) $1.00 in cash or (ii) for each Share subject to a stock option with an exercise price above $11.50 but below $12.50, the amount in cash equal to the excess of $12.50 over the per Share exercise price of such stock option (collectively, the "Milestone Payment"), net to the seller in cash, without interest, if the milestone set forth in the Contingent Value Rights Agreement (the "CVR Agreement") is achieved.

3.     On May 12, 2020, Defendants authorized the filing of a materially incomplete and misleading Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") that recommended that Company stockholders tender their shares in support of a proposed transaction whereby Mercury Merger Sub, Inc., a wholly owned subsidiary of Berlin-Chemie, will merge with and into Stemline, with Stemline continuing as the surviving corporation and as a wholly owned subsidiary of BerlineChemie (the "Proposed Transaction"). The Recommendation Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding (i) Stemline's financial projections relied upon by the Company's financial advisors, PJT Partners LP ("PJT") and BofA Securities, Inc. ("BofA") in their financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness

opinions provided by the financial advisors; and (iii) PJT's and Company insiders' potential conflicts of interest.

4.     Pursuant to the Merger Agreement, Merger Sub commenced a tender offer to acquire all of Stemline's outstanding common stock that will expire on June 9, 2020. Therefore, it is imperative that the material information omitted from the Recommendation Statement be disclosed to the Company's stockholders prior to June 9, 2020 so that they can properly determine whether to tender their shares.

5.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from consummating the Proposed Transaction unless and until the material information discussed below is disclosed to Stemline's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## PARTIES

6.     Plaintiff is, and has been at all relevant times, a stockholder of Stemline.

7.     Stemline Therapeutics, Inc. is a commercial-stage biopharmaceutical company focused on the development and commercialization of novel oncology therapeutics. ELZONRIS® (tagraxofusp), a targeted therapy directed to CD123, is FDA-approved and commercially available in the U.S. for the treatment of adult and pediatric patients, two years and older, with blastic plasmacytoid dendritic cell neoplasm ("BPDCN"). It is the only FDA-approved therapy for BPDCN in the U.S. It maintains its principal executive offices at 750 Lexington Avenue, 11th Floor New York, NY 10022.  The Company's common stock is listed on the NASDAQ under the ticker symbol "STML."

8.     Defendant Ron Bentsur ("Bentsur") has served as a member of the Board since

2009.

9.      Defendant Ivan Bergstein ("Bergstein") is Stemline's Chairman and Chief Executive Officer.

10.     Defendant Darren Cline ("Cline") has served as a member of the Stemline Board since April 2018.

11.     Defendant Alan Forman ("Forman") has served as a member of the Stemline Board since April 2015.

12.     Defendant Daniel Hume ("Hume") has been a member of the Stemline Board since April 2018.

13.     Defendant Mark Sard ("Sard") has served as a member of the Stemline Board since April 2018.

14.     Defendant Kenneth Zuerblis ("Zuerblis") has served as member of the Stemline Board since March 2012.

15.     The defendants described in ¶¶ 8-14 are referred to herein as the "Individual Defendants."

16.     Collectively, Stemline and the Individual Defendants are referred herein as "Defendants."

## JURISDICTION AND VENUE

17.     The claims asserted herein arise under §§ 14(d) and 20(a) of the Exchange Act, 15 U.S.C. § 78aa. This Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

18.     The Court has personal jurisdiction over all of the defendants because each is either a corporation that is headquartered in this District, or is an individual who is either present in this

District for jurisdictional purposes or has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

19.     Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because a substantial portion of the transactions and wrongs complained of herein, occurred in this District, and Stemline is headquartered in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

***Background of the Company***

20.     Stemline is a commercial-stage biopharmaceutical company focused on the discovery, acquisition, development, and commercialization of oncology therapeutics in the United States and Europe. Stemline was founded in 2003 and is headquartered in New York, New York.

21.     The company offers ELZONRIS, a targeted therapy directed to the interleukin-3 receptor (CD123) for patients with BPDCN in adults, and in pediatric patients two years and older. It also developing CD123 that is in Phase I/II clinical trials for the treatment of chronic myelomonocytic leukemia and myelofibrosis, as well as acute myeloid leukemia and multiple myeloma in combination with other therapies. In addition, the company is developing SL-801, a novel oral small molecule reversible inhibitor of nuclear transport protein, which is in Phase I clinical trial for the treatment of solid and hematologic cancers; and SL-701, an immunotherapy that has completed Phase II clinical trials to treat brain cancer.

22.     The Company's preclinical pipeline products include SL-501, a CD123 targeted therapy; SL-1001, an oral, selective small molecule RET kinase inhibitor targeting multiple

oncology indications; and SL-901, a small molecule kinase inhibitor.

23.     In the Press Release, dated May 4, 2020, the Company announced that they had entered into the Merger Agreement, pursuant to which the Company would be acquired for $11.50 per share, plus one CVR representing the right to receive $1.00 in cash in the Tender Offer.

24.     In relevant part, the Press Release reads:

> FLORENCE and NEW YORK – May 4, 2020 – Menarini Group, a privately held Italian pharmaceutical and diagnostics company, and Stemline Therapeutics Inc., a commercial-stage biopharmaceutical company focused on the development and commercialization of novel oncology therapeutics, (Nasdaq: STML) today announced a definitive agreement under which Menarini Group will acquire Stemline in a transaction valued up to $677 million.
>
> Under the terms of the agreement, a wholly owned subsidiary of the Menarini Group will commence a tender offer for all outstanding shares of Stemline, whereby Stemline shareholders will be offered a total potential consideration of $12.50 per share, consisting of an upfront payment of $11.50 in cash and one non-tradeable Contingent Value Right (CVR) that will entitle each holder to an additional $1.00 in cash per share upon completion of the first sale of ELZONRIS in any EU5 country after European Commission approval. Stemline launched ELZONRIS for the treatment of blastic plasmacytoid dendritic cell neoplasm (BPDCN) in adult and pediatric patients, two years or older, following the approval by the United States Food and Drug Administration in December 2018. ELZONRIS is a novel targeted therapy directed to the interleukin-3 (IL-3) receptor-α (CD123).
>
> With the support of Menarini's infrastructure, Stemline will continue its efforts to develop additional applications of ELZONRIS to serve the unmet needs of patients suffering from difficult to treat diseases and cancers. Following its strong U.S. launch of ELZONRIS, Stemline will benefit from Menarini's experience in bringing products to markets in Europe and emerging markets as it prepares for a successful international launch upon receipt of regulatory approval in ex-U.S. territories.
>
> Elcin Barker Ergun, CEO of Menarini Group, commented, "Stemline is an excellent fit for Menarini, enabling us to expand our presence in the U.S. with an established biopharmaceutical company focused on developing oncology therapeutics. Through this acquisition, we

will continue to strengthen our portfolio and pipeline of oncology assets and deliver novel therapies around the world. We look forward to uniting together with the Stemline team to advance our shared mission of serving patients."

Ivan Bergstein, M.D., Chairman, CEO and Founder of Stemline, said, "Joining Menarini represents a unique opportunity for Stemline to advance the commercialization of ELZONRIS across the globe and to accelerate the development of our pipeline of oncology assets. We have transitioned Stemline over the last several years into an established commercial-stage operation with a novel treatment, a growing pipeline and a strong foundation. We are excited to be combining with a like-minded organization in Menarini, in a transaction that will deliver immediate and significant cash value to our shareholders, while also allowing our shareholders to participate in the future upside of ELZONRIS's European launch. We look forward to working closely together on our unified goal of helping and delivering hope to patients worldwide."

**Transaction Terms**

Under the terms of the agreement, a wholly owned subsidiary of the Menarini Group will commence a tender offer for all outstanding shares of Stemline, whereby Stemline shareholders will be offered a total potential consideration of $12.50 per share, consisting of an upfront payment of $11.50 per share in cash, along with one non-tradeable Contingent Value Right (CVR).

Under the terms of the non-tradeable CVR, Stemline shareholders will be paid an additional $1.00 per share upon completion of the first sale for use or consumption by the general public of ELZONRIS in BPDCN in any one of the following countries: United Kingdom, France, Spain, Germany, or Italy after receiving approval by the European Commission of a Marketing Authorization Application (MAA), through the centralized procedure, on or before December 31, 2021. There can be no assurance such approval or commercialization will occur or that any contingent payment will be made.

Menarini will acquire any shares of Stemline not tendered into the tender offer through a second-step merger for the same per share consideration as will be payable in the tender offer. The merger will be effected as soon as practicable after the closing of the tender offer.

The transaction has been unanimously approved by the Boards of Directors of both companies. Stemline's Board of Directors

recommends to shareholders of Stemline that they tender their shares into the tender offer. The transaction is expected to close in the second quarter of 2020, subject to customary closing conditions, including the tender of more than 50% of all shares of Stemline outstanding at the expiration of the offer and receipt of Hart-Scott-Rodino clearance. The terms and conditions of the tender offer will be described in the tender offer documents, which will be filed with the U.S. Securities and Exchange Commission.

Menarini expects to fund the acquisition through existing cash resources.

25.    On May 12, 2020, Merger Sub commenced the Tender Offer and the Company filed the Recommendation Statement with the SEC.  The Tender Offer is currently scheduled to close on June 9, 2020.

***The Recommendation Statement Fails to Disclose Material Information Concerning the Company's Financial Projections and the Financial Analyses of the Financial Advisors***

26.    Designed to convince stockholders to tender their shares in favor of the Proposed Transaction, the Recommendation Statement is rendered misleading by the omission of critical information concerning the fairness of the Proposed Transaction, and the process leading up to the signing of the Merger Agreement.

27.    The Recommendation Statement describes the fairness opinions of the financial advisors and the various valuation analyses they performed in support of their opinions. However, the description of the analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Stemline's stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinions of BofA and PJT in determining whether to tender their shares in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Stemline stockholders.

28.     With respect to PJT's Selected Comparable Company Analysis, the analysis fails to disclose: (i) the total enterprise value and the line-items used to calculate it; (ii) the reason for selecting each comparable company; and (iii) the reasons why PJT Partners disregarded companies which BofA Securities found comparable.

29.     With respect to PJT's Selected Precedent Merger Analysis, the Recommendation Statement fails to provide the observed valuation multiples for each company utilized in its respective analysis.

30.     With respect to BofA's Selected Comparable Company Analysis, the Recommendation Statement fails to disclose: (i) the total enterprise value and the financial metrics used to calculate it; and (ii) the reason for selecting each comparable company.

31.     With respect to BofA's premiums paid analysis, the Recommendation Statement fails to disclose the transactions and premiums observed.

32.     With respect to PJT's analysis of research analysts' price targets, the Recommendation Statement fails to disclose the observed price targets and the sources thereof.

33.     With respect to BofA's analysis of equity research analyst price targets, the Recommendation Statement  fails to disclose the observed price targets and the sources thereof.

34.     With respect to PJT's Discounted Cash Flow Analysis ("DCF"), the Recommendation Statement fails to disclose: (i) whether the unlevered free cash flows ("UFCFs") (including NOL cash tax savings) for the period April 1, 2020 through fiscal year end 2031 utilized by PJT in the analysis differ from the UFCFs set forth in the "Management Projections" section of the Recommendation Statement and, if so, quantification thereof; (ii) quantification of the inputs and assumptions underlying the discount rate range of 12% to 14%; (iii) the implied fully diluted shares based on shares, options and RSUs outstanding as of April 30, 2020, as provided by

Company management; and (iv) the terminal value for the Company or PJT's rationale for not calculating a terminal value for Stemline.

35.     With respect to BofA's DCF, the Recommendation Statement fails to disclose: (i) whether the standalone risk-adjusted UFCFs based on the Company management projections and tax attributes differ from the UFCFs set forth in the "Management Projections" section of the Recommendation Statement and, if so, quantification thereof; (ii) quantification of the inputs and assumptions underlying the discount rate range of 9.0% to 12.0%; (iii) Stemline's estimated cash, per Stemline management; and (iv)  a terminal value for the Company.

36.     Finally, with respect to both BofA's and PJT's Discounted Cash Flow Analyses, the Recommendation Statement fails to disclose why BofA utilized discount rates ranging from 9.0% to 12.0%, while PJT Partners utilized a discount rate range of 12% to 14%.  This is an enormous difference in discount rate ranges, and no explanation therefor is provided. Clearly, the assumptions behind how BofA and PJT selected their discount rates is critical to shareholders in light of their respective decisions to apply different discount rates and the key differences between the two analyses.

37.     The omission of this information renders certain portions of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act including, inter alia, the following section of the Recommendation Statement: (i) "*Certain Financial Projections*;" and (ii) "*Opinions of Stemline's Financial Advisors*."

**_The Recommendation Statement Fails to Disclose Material Information Concerning PJT's and Company Insiders' Potential Conflicts of Interest_**

38.     The Recommendation Statement also omits to disclose material information concerning the potential conflicts of interest faced by PJT and certain insiders.

39.     As described in the Recommendation Statement PJT is set to receive "additional compensation" for its work on behalf of Stemline:

> PJT Partners is acting as financial advisor to Stemline in connection with the Transactions. As compensation for its services in connection with the Transactions, PJT Partners is entitled to receive from Stemline (i) $1.0 million, which became payable upon the delivery of PJT Partners' opinion to the Stemline Board, (ii) additional compensation upon the closing of the Transactions which is based upon a formula and was estimated to be approximately $8.3 million as of May 4, 2020, and (iii) additional compensation upon payment of the Milestone Payment, if any, which is based upon a formula and was estimated to be approximately $800,000 as of May 4, 2020, resulting in total fees of approximately $10.1 million. Stemline has also agreed to reimburse PJT Partners for out-of-pocket expenses and to indemnify PJT Partners for certain liabilities arising out of the performance of such services (including the rendering of PJT Partners' opinion).

Recommendation Statement at 41. However, the Recommendation Statement fails to disclose the formulas that will determine the amount of PJT's additional compensation it expects to receive upon closing of the Proposed Transaction and upon payment of the milestone payment.

40.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

41.     Similarly, the Recommendation Statement also fails to disclose material information concerning the potential conflicts of interest faced by the Company's insiders. As noted in the Press Release, Elcin Barker Ergun, CEO of Menarini Group, stated, "We look forward to uniting together with the Stemline team to advance our shared mission of serving patients." The continuing involvement of Stemline employees in the combined company was also detailed in the Recommendation Statement as Stemline stockholders were alerted that some Stemline executives had entered into agreements:

> It is possible that Continuing Employees, including the executive officers, will enter into new compensation arrangements with Parent or its affiliates. Such arrangements may include agreements regarding future terms of employment, the right to receive equity or equity-based awards of Parent or retention awards. As of

the date of this Schedule 14D-9, no compensation arrangements between such persons and Parent and/or its affiliates have been established, ***other than as described herein***.

Recommendation Statement at 11.

42.     However, the Recommendation Statement, fails to disclose the details of all employment and retention-related communications that occurred between Menarini Group and Stemline executive officers and directors, including who participated in all such communications, when they occurred and their content. The Recommendation Statement further fails to disclose whether any of Menarini Group's proposals or indications of interest mentioned management retention. Stockholders must be informed of communications regarding post-transaction employment of, and merger-related benefits to, officers and directors during the negotiation of the underlying transaction. This information is necessary for Stemline's stockholders to understand potential conflicts of interest of management and the Board so that they can evaluate any motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

43.     The omission of this information renders the statements in the "*Arrangements Between Stemline and its Executive Officers, Directors and Affiliates*," and "*Background of the Offer and the Merger*" sections of the Recommendation Statement materially false and/or so incomplete as to be misleading.

44.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention

## CLAIMS FOR RELIEF

## COUNT I

**Individual Claims Against All Defendants for Violations of § 14(d)(4) of the Securities Exchange Act of 1934 and SEC Rule 14d-9 (17 C.F.R. § 240.14d-9)**

45.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

46.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

47.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

48.     The Recommendation Statement violates §14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omissions render the Recommendation Statement false and/or misleading.

49.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants had full and unfettered access to and/or actually reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement so materially incomplete as to be materially misleading.

50.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT II

**Individual Claims Against All Defendants for Violations of § 20(a) of the
1934 Act Against the Individual Defendants**

51.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Stemline within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Stemline and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein and exercised the same. The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the preparation and issuance of the Recommendation Statement.

55.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d)(4) of the 1934 Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

a)  declaring that the Recommendation Statement is materially false or misleading;

b)  enjoining, preliminarily and permanently, the Proposed Transaction;

c)  in the event that the Proposed Transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

d)  directing that Defendants account to Plaintiff for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

e)  awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

f)  granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.


Dated: May 26, 2020                                    Respectfully submitted,


**LEVI & KORSINSKY, LLP**                    By:  /s/ *Sebastiano Tornatore*
Donald J. Enright (to be admitted *pro hac vice*)       Shannon L. Hopkins (SH-1887)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)    Sebastiano Tornatore (ST-0304)

1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 333-2121
Email: denright@zlk.com
      etripodi@zlk.com

*Attorneys for Plaintiff*

**LEVI & KORSINSKY, LLP**
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel.: (203) 992-4523
Fax: (212) 363-7171
Email: stornatore@zlk.com
shopkins@zlk.com

*Attorneys for Plaintiff*